[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 13, 2006
THOMAS K. KAHN
CLERK

No. 05-15158
Non-Argument Calendar
_____

D. C. Docket No. 04-00022-CR-02-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN MICHAEL LYLES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(September 13, 2006)**

Before DUBINA, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Kevin Michael Lyles appeals his 120-month sentence, which was imposed after he pled guilty to possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii).  On appeal, Lyles argues that the

district court erred at sentencing by (1) denying Lyles's request for an acceptance-of-responsibility reduction, pursuant to § 3E1.1(a) of the Sentencing Guidelines, due to Lyles's drug use while on pretrial release, and (2) comparing his conduct to his co-defendants' conduct at a joint sentencing hearing, in violation of Lyles's Eighth Amendment right to an individualized sentencing hearing. After careful review, we affirm.

We review a district court's factual findings concerning a reduction for acceptance of responsibility for clear error. United States v. Williams, 408 F.3d 745, 756 (11th Cir. 2005). Under the clear error standard, the defendant bears the burden of showing entitlement to the reduction, and the sentencing judge is entitled to great deference on review. Id.

As for Lyles's argument that the district court did not provide him with a sufficiently individualized sentencing determination, he raises this claim for the first time here. We review preserved constitutional errors at sentencing de novo, but will reverse only for harmful error. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005). However, if the defendant fails to object before the district court, our review is for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, 125 S. Ct. 2935 (2005). Under the plain error standard of review, there must be (1) an error, (2) that is plain, and (3) that affects substantial

2

rights. Id. If these three conditions are met, we may notice the error only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (citation and quotation marks omitted).

The facts relevant to Lyles's sentencing claims are as follows. On September 16, 2004, Lyles and three co-defendants were indicted on drug and weapons charges relating to a conspiracy to distribute methamphetamine. Lyles was charged with (1) conspiracy to possess with the intent to distribute and distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) and 21 U.S.C. § 846 (Count One); (2) aiding and abetting in distributing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii) and 18 U.S.C. § 2 (Count Three); (3) possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii) (Count Six); and (4) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Seven). After being released on pretrial bond, Lyles was arrested for violating the conditions of his pretrial release. Lyles admitted that he used methamphetamine during his pretrial release, after which his bond was revoked and he was ordered detained pending trial. Thereafter, pursuant to a written plea agreement, Lyles pled guilty to Count Six and the government agreed to dismiss the remaining counts.

According to the undisputed statement of facts from the presentence investigation report ("PSI"), an investigation by law enforcement officials revealed that Lyles was involved in distributing methamphetamine in Soperton, Georgia. In February 2003, Sven Dickey informed authorities that he and three other individuals distributed methamphetamine for Lyles, and that Lyles traveled to Atlanta twice a week to pick up methamphetamine. On January 21, 2004, co-defendant Anthony Lanier Wilson sold methamphetamine to an undercover agent. Later that same month, officers established surveillance on Lyles's residence and arranged to purchase two ounces of methamphetamine from Wilson. After the officers observed Wilson and Lyles as they left Lyles's residence together, the undercover agent contacted Wilson who stated that he was with his "boss." Wilson was later arrested, and he told authorities that he had obtained methamphetamine from Lyles each week for one year.

A subsequent search of Lyles's residence uncovered, among other items, (1) 35 grams of methamphetamine in Lyles's bedroom; (2) .65 grams of methamphetamine in his garage; (3) numerous firearms and ammunition; and (4) digital scales. Lyles agreed to cooperate with investigators and informed them that he had purchased methamphetamine in "ice" form from co-defendants Billy Tomlin and Ronnie Butler. With Lyles's cooperation, authorities subsequently

4

arrested Tomlin and Butler when they arrived at Lyles's residence to deliver some methamphetamine. After Lyles was granted pretrial release, he admitted that he used methamphetamine and reported that he obtained the methamphetamine from his ex-wife, with whom he had previously been advised to have no contact.

The PSI set Lyles's base offense level at 32, pursuant to U.S.S.G. § 2D1.1(c)(4), because the offense involved 103.84 grams of methamphetamine, and recommended no reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, because Lyles used methamphetamine while on pretrial release. The probation officer applied a two-level enhancement for possession of a dangerous weapon, pursuant to U.S.S.G. § 2D1.1(b). With a total offense level of 34 and a criminal history category of I, Lyles's Guidelines range was 151 to 188 months' imprisonment. The statutory range of imprisonment was 5 to 40 years.

Before the sentencing hearing, Lyles objected to the probation officer's failure to apply a reduction for acceptance of responsibility and the government filed a motion for downward departure, pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553, noting that Lyles provided substantial assistance.

Lyles and his three co-defendants were sentenced at a combined hearing. At the hearing, Lyles argued that his use of methamphetamine while on pretrial release did not justify the court's denial of a reduction for acceptance of

responsibility because although he was a drug addict, he had immediately accepted responsibility and cooperated with officials upon his arrest. He also urged the court not to apply "a bright-line rule" in deciding whether to grant a reduction for acceptance of responsibility. The district court considered letters from Lyles's family and friends and heard the testimony of Lyles's mother, as well as Lyles's statement of remorse.

Prior to imposing sentence, the district court noted that Lyles's situation was comparable to that of co-defendants Butler and Wilson, who also violated the terms of their pretrial release by using drugs. The court acknowledged that it was "not unmindful of the forces of addiction," but then denied Lyles, Wilson, and Butler reductions for acceptance of responsibility because (1) they sold methamphetamine to others "so that they may be brought into the same unhappy world"; (2) they did not meaningfully withdraw from further criminal conduct because they engaged in criminal conduct by purchasing and using methamphetamine while on pretrial release; and (3) they knew about the consequences of using drugs while on pretrial release.

The court further explained that it must attempt to "mold a sentence to fit the culpability of each [of the defendants]" and stated that it had "afforded each defendant and his counsel an opportunity to be heard. I have reviewed and

6

considered the [PSI's] of each defendant." The court then found that (1) a significant amount of methamphetamine was involved; (2) Lyles was the "brains behind [the] loosely knit operation;" and (3) Lyles was the most cooperative with law enforcement. After granting co-defendant Butler a downward departure and imposing a 72-month sentence on Tomlin, who had a lower Guidelines range than the others, the court again observed that Lyles was "most likely the brains behind [the] operation," and his conduct was "roughly equivalent" to Wilson's conduct. The court then sentenced both Lyles and Wilson to 120 months' imprisonment. Lyles did not object to the court's factual findings or the manner in which the sentence was imposed. This appeal followed.

Under U.S.S.G. § 3E1.1(a), a sentencing court may grant a two-level decrease in offense level if the defendant "clearly demonstrates acceptance of responsibility for his offense. . . ." United States Sentencing Commission, Guidelines Manual, § 3E1.1(a) (Nov. 2004). In United States v. Hromada, 49 F.3d 685, 691 (11th Cir. 1995), we held that a defendant who tested positive for drug use during pretrial release, but before his guilty plea, and lied about using drugs was not entitled to a reduction for acceptance of responsibility. Likewise, in United States v. Scroggins, 880 F.2d 1204, 1215-16 (11th Cir. 1989), we found no clear error in the district court's denial of the reduction where the defendant

accepted responsibility and provided authorities with information, but continued to use cocaine after his arrest, and, therefore, had not turned away from the lifestyle that motivated his offense. Because a defendant's continued use of illegal drugs constitutes a continuation of the drug offense for which he was convicted, a district court's denial of a reduction for acceptance of responsibility on this ground is not clearly erroneous. See United States v. Matthews, 168 F.3d 1234, 1250 (11th Cir. 1999); see also U.S.S.G. § 3E1.1, comment. (n.1(b)) (providing that, in determining whether a defendant has accepted responsibility, the court may consider "voluntary termination or withdraw from criminal conduct or associations").

In the instant case, the district court did not clearly err by making the factual finding that Lyles's continued use of drugs while on pretrial release showed that he did not accept responsibility because he had not voluntarily terminated his criminal conduct. The Guidelines unambiguously provide that whether a defendant voluntarily withdraws from criminal conduct is a factor the district court can consider in determining whether to grant a reduction for acceptance of responsibility, and Lyles does not dispute that he purchased and used

8

methamphetamine while on pretrial release. Accordingly, the district court's denial of the reduction was not clear error.[1]

We also are unpersuaded by Lyles's second argument, that his Eighth Amendment right to an individualized sentencing hearing was violated because the district court compared his conduct with his co-defendants' conduct at a joint sentencing hearing. In United States v. Ismond, 993 F.2d 1498, 1499 (11th Cir. 1993), we held that, in determining a defendant's liability for the acts of co-conspirators, "the district court must first make individualized findings concerning the scope of criminal activity undertaken by a particular defendant." Once the extent of the defendant's participation in the conspiracy is established, the district court may determine the drug quantity that was reasonably foreseeable based on the level of the defendant's participation in the conspiracy. Id.

---

[1] Lyles's argument that the district court improperly applied a bright-line rule that if an addict uses drugs, he has not accepted responsibility for his crime, is without merit. The Guidelines enumerate that, in determining whether a defendant qualifies for a reduction for acceptance of responsibility, the court may consider, but is not limited to considering, several factors, including the defendant's voluntary withdrawal from criminal conduct. However, the Guidelines do not state that the district court must consider these factors, and the sentencing judge is entitled to great deference on review. Lyles cites no relevant caselaw or Guidelines commentary in support of his position that the district court must look to factors other than the defendant's continued drug use while on pretrial release. From our review of the transcript of the sentencing hearing, even if the district court would err by applying a bright-line rule, it is clear in this case that the court applied no such rule, as the court acknowledged that while it was "not unmindful of the forces of addiction," Lyles knew about the consequences of using drugs, and he sold drugs with the knowledge that others would likely become addicted, too. On this record, we can discern no error in the district court's application of the Guidelines.

Our review of the sentencing transcript and Lyles's PSI reveals that the district court fully complied with the requirements of Ismond. The court provided Lyles the opportunity to present argument and to provide the court with mitigating evidence in the form of letters from family and friends and the testimony of Lyles himself and his mother. Moreover, Lyles's PSI contained individualized factual statements as to his involvement in the conspiracy and, at the sentencing hearing, the district court made individualized findings about the scope of Lyles's involvement in the conspiracy, including that he, unlike his co-defendants, was "the brains" behind the methamphetamine operations and was in possession of a significant number of firearms, "some of which were uniquely configured to be of use to a drug dealer." On this record, Lyles has not shown error -- the first prong of his burden under the plain error test -- and we, accordingly, affirm.

**AFFIRMED.**